Stanley HUNT, d/b/a Acme Plumbing and Heating Company, Appellant,

v.

John RIGGINS, Frank W. Sampson and Emogene H. Sampson, Respondents.

No. 23168.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Fred A. Lambert, Jr., Lambert & Patterson, Columbia, for appellant.

Brown, Wright & Willbrand, Columbia, for respondents.

CROSS, Judge.

In this action a subcontractor sues the general building contractor for the value of materials and labor furnished for construction of a house, and seeks to establish a mechanic's and materialmen's lien on the house and lot.

The suit was filed as an independent action by Stanley Hunt, a plumbing and heating contractor, against defendant John Riggins, the general contractor, and defendants Frank W. Sampson and Emogene H. Sampson, property owners who had contracted with Riggins to build a house. Upon motion, Hunt's suit was consolidated with a prior action, but was tried separately after the other claims and causes were disposed of.

Trial was before the court without a jury and was upon Hunt's counterclaim against defendant John Riggins for the sum of $4,425.68 alleged as due for materials and labor furnished, and against the Sampsons, as defendants, praying that a lien be established on their house and lot.

The trial court found that the reasonable value of the materials and labor was $3,987.65. Judgment in that sum, with interest, was entered in favor of cross-claimant Hunt against defendant Riggins.

The court additionally found that Hunt had not filed a statement of his claim within four months of the accrual of his debt, as required by the lien statute, and that he was not entitled to a lien against the Sampson's property. The judgment ordered that Hunt take nothing from the Sampsons and that they be discharged. Hunt appeals.

■ Appellant first contends that the trial court erred in entering judgment against Riggins for only $3,987.65, with interest, after having found that sum to be the reasonable value of the work and materials. He claims the judgment should not be limited to the reasonable value of those items but should be for the "contract price", and in the sum of $4,402.18, with interest.

Appellant says he had been doing the plumbing and heating work on houses built by Riggins with an "understanding" between them that he would charge Riggins 25% over material cost and give him a "fair deal" on labor. Appellant admits there was no new or separate agreement as to each house. The sum of $4,402.18 is the total amount claimed, as calculated in accordance with the "understanding".

Appellant's cause of action is bottomed on his first pleading, the counterclaim on which the case was tried. In paragraph 3, he states: "That during a period of time commencing in June, 1956, and continuing through and including the month of May, 1957, this cross-complaint, at the special insistence (sic) and request of the defendant, John Riggins * * * furnished certain material and labor in the construction of a dwelling house and garage * * * in the sum of Four Thousand Four Hundred Twenty-five Dollars and Sixty-eight Cents ($4,425.68)." Judgment was prayed for the alleged sum.

No contract is alleged or referred to anywhere in the pleading. Hence, we cannot regard the claim as one based on a contract. The counterclaim pleads nothing but an entitlement to the reasonable value of the material and labor.

Appellant cannot abandon his claim pleaded in quantum meruit and try the cause on an unpleaded contract. The courts have not permitted that variance. See Kansas City Structural Steel Co. v. Athletic Bldg. Ass'n et al., 297 Mo. 615, 249 S.W. 922.

No argument is here made by appellant that the reasonable value of the material and labor is other than as found by the trial court.

In his after trial motion to amend the judgment and opinion, appellant made no allegation that the court's finding of reasonable value was erroneous. The complaint made was that he was entitled to the "contract" price. In fact, appellant adopted and relied upon the court's finding as the

basis for affirmative relief prayed in the following words of the motion: "Wherefore, the cross-claimant, Stanley Hunt, prays the Court for its order amending its judgment and opinion in the following respects, to-wit: * * * that the cross-claimant is entitled to have a lien on the real estate described in the cross-claim belonging to Frank W. and Emogene H. Sampson in an amount of Three Thousand, Nine Hundred Eighty-seven and 65/100 Dollars ($3,987.65), *the reasonable value of work and materials* furnished, * * *." (Emphasis supplied.) Appellant's motion for new trial contains no further reference to the court's finding as to reasonable value.

From our review of the evidence, we conclude that it supports the trial court's finding of the reasonable value of the work performed and materials furnished by appellant under the subcontract, and we make the same finding. The contention is ruled against appellant.

■ Appellant urges in his second point that he should not have been adjudged liable for costs, but that costs should have been taxed against respondent Riggins. Appellant admits that courts have inherent discretionary power, in equity cases, to depart from the usual rule that the prevailing party is entitled to costs if such action is justified, in equity and good conscience, by the circumstances of the case. Appellant has designated this cause as one in equity, but he denies the existence of such justifying circumstances.

■ The record shows that respondent Riggins was present at the trial, but not represented by counsel. He was the first witness called by appellant and testified on appellant's behalf. After the conclusion of appellant's case, Riggins offered neither himself nor any other witness to testify in his defense. He made no resistance to appellant's claim. For all practical purposes he stood in default. It is a reasonable inference that a separate claim against him would have gone to judgment by actual default.

■ It is apparent that the trial arose as a terminal necessity in an unresolved controversy between appellant and the Sampsons over the lien claimed by appellant and not by reason of the claim against Riggins. The trial was devoted almost entirely to the lien issue. The only defense made during its course was on behalf of the Sampsons. Riggins, although a nominal defendant, was not a trial participant. In reality he was an observer—a bystander. In our opinion it would have been unjust to tax the costs against Riggins under the circumstances shown. We rule that the entry of a judgment for costs against appellant was within the trial court's reasonable discretion.

Appellant contends, in conclusion, that he is entitled to a mechanic's and materialmen's lien on the Sampson house. Supplementing other reasons urged, appellant says the lien statement was timely filed. The Sampsons had made the defense at the trial that the statement was not filed within four months after the claimed indebtedness accrued, as required by Section 429.080, V.A.M.S. The trial court ruled the issue, under conflicting evidence, against appellant.

The statement of lien account was filed on August 23, 1957. It follows that a valid lien could not be adjudged under the provisions of Section 429.080 on account of any labor performed or materials furnished prior to April 23, 1957. Conversely, any item of labor performed or materials furnished after April 23, 1957, is within the statute's four month limitation period.

Appellant relies upon and claims that he performed two items of labor after April 23, 1957. The first is claimed as two hours of plumbing work performed on May 3, 1957. The second is an alleged four hours of sheet metal work on May 18, 1957. Appellant claims some materials were also furnished on the latter date.

Appellant's entire evidence on the May 3d item is limited to an entry made by him on his shop record of plumbing work done on the Sampson house. The work record is contained on three bill head sheets stapled together. It consists of entries showing dates, hours of work done by "plbr" and "helper" and the amount of wages. With the exception of the May 3d item, all entries are dated between June 18, 1956 and January 19, 1957. With the exception of the May 3d item, all other items are written by lead pencil. The May 3d entry, alone, is written in ink, for which fact appellant could state no reason. Appellant's deposition was taken before the trial. He was then examined as to the May 3d item. He testified that it was a charge for 2 hours labor performed in changing a sill cock on the outside of the house so as to connect with a cold water pipe instead of a hot water pipe, as had been done by a plumbing mistake.

At the trial, appellant testified that the sill cock work was not done on May 3d and that he was mistaken when he so stated in his deposition. Appellant could not say what work was done on May 3d. He stated that whatever it was, it represented one hour of work by Levi Harmon and one hour by Glenn Fisher. Neither of those employees was produced to testify.

Respondent Frank W. Sampson, a biologist employed by the Missouri Conservation Commission, testified that the sill cock was not changed on May 3, 1957, but that such change was made during the first week of March, 1957. He fixed the exact time by stating it was done while he was on a trip into Christian County for the Conservation Commission. Mrs. Sampson also testified that the sill cock was fixed approximately the first of March, 1957. She was positive it was not done on May 3, 1957.

The claim that work was done on May 18, 1957, is also based on appellant's work records. He says they show that his employees George Chapman and Joe Robinson each did 2 hours of sheet metal work on

that date by venting the kitchen fan in a basement apartment at the Sampson home. George Chapman had complete charge of all sheet metal work and kept a record of the labor by entries in time books which were in his custody. Chapman made most of the entries but sometimes helpers made them. The book for May, 1957, contains identical entries for Chapman and Robinson, dated May 18, 1957, in the words: "(Sampson), Shop K Vent, 2". The entry for Chapman was written in ink; for Robinson, by pencil. Both entries were in Chapman's handwriting. Chapman didn't know for sure whether both entries were made at the same time. He relied on his memory when he wrote them. Chapman testified he was sure there were several mistakes in the book and that it could possibly be wrong. The time book had other numerous entries designated only as "shop". When Chapman was asked why he wrote the additional words "Sampson" and "K Vent" on the May 18th entries but didn't write any such identifying words in all other "shop" entries, he stated, "I don't know why I did that". When Chapman was subpoenaed to produce the time records at a deposition, he failed to bring them. Instead, he took them to and left them with appellant.

Some time prior to May 18th, the duct had been run from the kitchen fan in the basement apartment through a clothes closet wall, into the space under the basement stairs, but no farther. To complete the venting, it was necessary to extend the duct to and through the outside wall. Chapman stated that to finish the venting job it was necessary to get under the basement stairway.

Appellant's employee and witness, Joe Robinson, testified that to the best of his memory he went in underneath the basement stairs through a "board left loose". He had no independent recollection of the date, but remembered seeing some tree buds that had fallen.

It is contended by the Sampsons that the kitchen fan duct work could not have been

done after March 26, 1957, for the reason that the basement stairs had then been closed up with sheet rock which had never been removed. Respondent Frank Sampson testified that on March 25th or 26th, 1957, Bobby Peeler and Jesse Calvin, two carpenters, closed up the stair area with sheet rock.

Peeler and Calvin both testified that in March of 1957, they were hired by the Sampsons to do some carpenter work. They worked two days. At that time they put the sheet rock on the stair well and closed it in. The Sampsons paid them by check. This was shown by two cancelled checks, introduced in evidence, dated March 26, 1957. Both witnesses examined the sheet rock in the spring of 1959, at the Sampsons' request. In their opinion, the sheet rock had not been removed since its application. It was explained by Mr. Calvin that the sheet rock couldn't be removed unless the nails were set clear through with a nail set or punch. There were no marks or nail holes in the material to indicate it had been removed.

Mr. Sampson testified: "That sheet rock was put on there either March 25th or March 26th * * *. I think I can say conclusively that no one has been underneath that stairway since that wall board was put up because I could tell if it was torn down and replaced".

Mrs. Sampson testified that the sheet rock was installed by the carpenters in March, 1957, on the second day of their work at her home. She stated: "We have the cancelled checks to show that we paid to have it done on that day, and it has never been touched since".

The trial court made the specific finding that appellant's evidence as to work done on May 3d and May 18th was untrue. That court also found that the last item of work performed and material furnished by appellant under the Riggins contract was on March 13, 1957, and that appellant did not file a statement of his claim within four months of the time the debt accrued.

We have carefully examined all of the evidence and have given due consideration to all the facts and circumstances shown in a voluminous record of trial. It is neither necessary nor practicable to lengthen this opinion unduly by further analysis of the testimony. We have reached the conclusion that appellant has not sustained his burden of proof, and that the evidence preponderates in favor of respondents Sampson and Sampson on the issue of a timely filing of appellant's lien statement. We also find that appellant's evidence as to work done and material furnished on May 3d and May 4th, 1957, is untrue; that the last item of work and material was on March 13, 1957; and, that appellant filed no statement of his claim within four months of the debt's accrual. In reaching these results, we have given substantial and due weight to the findings of the trial judge, who had the opportunity to hear and view the witnesses and to judge their credibility.

In view of our determination that appellant is barred from enforcing a lien by the untimely filing of his statement, it has become unnecessary to consider other matters urged by appellant in support of his lien claim.

The judgment is affirmed.

All concur.